UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------

JOVANIE CLARKE,

           Plaintiff,

v.

FISHER-PARK LANE OWNER LLC,
FISHER BROTHERS MANAGEMENT CO. LLC,
MARKETAXESS CORPORATION,
MARKETAXESS HOLDINGS INC.,
CONGRUITY LLC,
CONGRUITY 360, LLC, SMOOTH OPERATORS
SERVICES LLC, WARREN BAINBRIDGE, 3PL
INTEGRATION LLC, FAST FLEET SYSTEMS, INC.,
FAST FLEET JFK, NICA, INC., BAIMBRIDGE
TRUCKING INC., AFD CONTRACT FURNITURE INC.,
PROCURRI LLC and ROCKLAND CONGRUITY LLC,

           Defendants.
-----------------------------------------------------------------------------

**SIXTH AMENDED COMPLAINT**

**Docket No.: 1:19-CV-06471**

Plaintiff, by his attorneys CELLINO LAW, LLP., as and for his complaint, respectfully alleges, as follows:

1. Attached and annexed as Exhibit "A" is the Court's order indicating that any additional parties are to be added by November 30, 2022.[1]

2. Plaintiff, at all times herein mentioned, was and still is domiciled in the County of Fairfield, State of Connecticut and is therefore a citizen of the State of Connecticut.

3. At all times herein mentioned, defendant FISHER-PARK LANE OWNER LLC was and is a Delaware limited liability company with its principal place of business at 299 Park

---

[1] Other than the paragraphs alleging the citizenship of the parties, all allegations are made upon information and belief to the extent facts are known at this time before the commencement of discovery.

Avenue, New York, New York. The LLC's only members are not citizens of the State of Connecticut and are citizens of New York based on their domicile in the State of New York.

4.      At all times herein mentioned, defendant FISHER BROTHERS MANAGEMENT CO. LLC was a Delaware limited liability company, organized and existing under the laws of the State of Delaware, with its principal place of business at 299 Park Avenue, New York, New York. The LLC's only members are not citizens of the State of Connecticut and are citizens of New York based on their domicile in the State of New York.

5.      Defendant MARKETAXESS CORPORATION, at all times herein mentioned, was and still is a foreign business corporation, organized and existing under Delaware law, authorized to conduct business in the State of New York, having a principal place of business at 55 Hudson Yards, in the City, County, and State of New York.

6.      Defendant MARKETAXESS CORPORATION, at all times herein mentioned, was conducting business in the State of New York.

7.      At all times herein mentioned, defendant MARKETAXESS CORPORATION transacted business within the State of New York and/or contracted to supply goods or services in the State of New York.

8.      At all times herein mentioned, defendant MARKETAXESS CORPORATION committed a tortious act within the State of New York.

9.      At all times herein mentioned, defendant MARKETAXESS CORPORATION committed a tortious act without the State of New York, causing injury to person or property within the State of New York.

10.     At all times herein mentioned, defendant MARKETAXESS CORPORATION owned, used, or possessed real property situated with the State of New York.

2

11. Defendant MARKETAXESS HOLDINGS INC., at all times herein mentioned, was and still is a foreign business corporation, organized and existing under Delaware law, authorized to conduct business in the State of New York, having a principal place of business at 55 Hudson Yards, in the City, County, and State of New York.

12. Defendant MARKETAXESS HOLDINGS INC., at all times herein mentioned, was conducting business in the State of New York.

13. At all times herein mentioned, defendant MARKETAXESS HOLDINGS INC. transacted business within the State of New York and/or contracted to supply goods or services in the State of New York.

14. At all times herein mentioned, defendant MARKETAXESS HOLDINGS INC. committed a tortious act within the State of New York.

15. At all times herein mentioned, defendant MARKETAXESS HOLDINGS INC. committed a tortious act without the State of New York, causing injury to person or property within the State of New York.

16. At all times herein mentioned, defendant MARKETAXESS HOLDINGS INC. owned, used, or possessed real property situated with the State of New York.

17. Defendant CONGRUITY LLC at all times herein mentioned, was and still is a foreign limited liability company, organized and existing under Massachusetts law, authorized to conduct business in the State of New York, having a principal place of business at 93 Longwater Circle, in the City of Norwell, County, and Commonwealth of Massachusetts. The sole member of the LLC is not a citizen of the State of Connecticut, and is and has been at all times a domiciliary and citizen of the Commonwealth of Massachusetts.

18. Defendant CONGRUITY LLC, at all times herein mentioned, was conducting business in the State of New York.

19. At all times herein mentioned, defendant CONGRUITY LLC transacted business within the State of New York and/or contracted to supply goods or services in the State of New York.

20. At all times herein mentioned, defendant CONGRUITY LLC committed a tortious act within the State of New York.

21. At all times herein mentioned, defendant CONGRUITY LLC committed a tortious act without the State of New York, causing injury to person or property within the State of New York.

22. At all times herein mentioned, defendant CONGRUITY LLC owned, used, or possessed real property situated with the State of New York.

23. Defendant CONGRUITY 360, LLC, at all times herein mentioned, was and still is a foreign business limited liability company, organized and existing under Massachusetts law, authorized to conduct business in the State of New York, having a principal place of business at 93 Longwater Circle, in the City of Norwell, County, and Commonwealth of Massachusetts.  All the members of the LLC are not citizens of the State of Connecticut and were and are domiciliaries and citizens of the Commonwealth of Massachusetts.

24. Defendant CONGRUITY 360, LLC, at all times herein mentioned, was conducting business in the State of New York.

25. At all times herein mentioned, defendant CONGRUITY 360, LLC transacted business within the State of New York and/or contracted to supply goods or services in the State of New York.

26. At all times herein mentioned, defendant CONGRUITY 360, LLC committed a tortious act within the State of New York.

27. At all times herein mentioned, defendant CONGRUITY 360, LLC committed a tortious act without the State of New York, causing injury to person or property within the State of New York.

28. At all times herein mentioned, defendant CONGRUITY 360, LLC owned, used, or possessed real property situated with the State of New York.

29. At all times herein mentioned, defendant FAST FLEET JFK was a domestic business corporation, organized and existing under the laws of the State of New Jersey.

30. At all times herein mentioned, defendant FAST FLEET SYSTEMS, INC was a business corporation, organized and existing under the laws of the State of New Jersey with a principal place of business at 1414 Calcon Hook Road, Sharon Hill, Pennsylvania.

31. At all times herein mentioned, FAST FLEET SYSTEMS, INC. was doing business as FAST FLEET JFK.

32. Defendant FAST FLEET JFK, at all times herein mentioned, was and still is authorized to conduct business in the State of New York, having a principal place of business at 147-10 181st Street, Jamaica, NY 11413.

33. Defendant FAST FLEET JFK, at all times herein mentioned, was conducting business in the State of New York.

34. At all times herein mentioned, defendant FAST FLEET JFK transacted business within the State of New York and/or contracted anywhere to supply goods or services in the State of New York.

35. At all times herein mentioned, defendant FAST FLEET JFK committed a tortious act within the State of New York.

36. At all times herein mentioned, defendant FAST FLEET JFK committed a tortious act without the State of New York, causing injury to person or property within the State of New York.

37. At all times herein mentioned, defendant FAST FLEET JFK owned, used, or possessed any real property situated with the State of New York.

38. At all times herein mentioned, SMOOTH OPERATORS SERVICES LLC was doing business as FAST FLEET JFK.

39. At all times herein mentioned, defendant SMOOTH OPERATORS SERVICES LLC, upon information and belief, was and still is a domestic business limited liability company, organized and existing under New York law, authorized to conduct business in the State of New York, having a principal place of business at 147-10 181ST STREET, JAMAICA, NY, 11413. Plaintiff requests that the court order the Defendant to disclose the citizenship of its members where that information is not public.

40. Defendant SMOOTH OPERATORS SERVICES LLC, at all times herein mentioned, was and still is a foreign business corporation, authorized to conduct business in the State of New York, having a principal place of business at 147-10 181st Street, Jamaica, NY 11413.

41. Defendant SMOOTH OPERATORS SERVICES LLC, at all times herein mentioned, was conducting business in the State of New York.

42. At all times herein mentioned, defendant SMOOTH OPERATORS SERVICES LLC was a New York limited liability company and transacted business within the State of New York and/or contracted anywhere to supply goods or services in the State of New York.

43. At all times herein mentioned, defendant SMOOTH OPERATORS SERVICES LLC committed a tortious act within the State of New York.

44. At all times herein mentioned, defendant SMOOTH OPERATORS SERVICES LLC committed a tortious act without the State of New York, causing injury to person or property within the State of New York.

45. At all times herein mentioned, defendant SMOOTH OPERATORS SERVICES LLC owned, used, or possessed any real property situated with the State of New York.

46. At all times herein mentioned, defendant WARREN BAINBRIDGE was and still is a domiciliary and citizen of the County of Bronx, State of New York.

47. At all times herein mentioned, defendant WARREN BAINBRIDGE was and still is an employee, agent or servant of CONGRUITY 360, LLC.

48. At all times herein mentioned, defendant WARREN BAINBRIDGE was and still is an employee, agent or servant of CONGRUITY, LLC.

49. At all times herein mentioned, defendant WARREN BAINBRIDGE was and still is an employee, agent or servant of FISHER-PARK LANE OWNER LLC.

50. At all times herein mentioned, defendant WARREN BAINBRIDGE was and still is an employee, agent or servant of FISHER BROTHERS MANAGEMENT CO. LLC,

51. At all times herein mentioned, defendant WARREN BAINBRIDGE was and still is an employee, agent or servant of MARKETAXESS CORPORATION,

52. At all times herein mentioned, defendant WARREN BAINBRIDGE was and still is an employee, agent or servant of MARKETAXESS HOLDINGS INC.

53. At all times herein mentioned, defendant WARREN BAINBRIDGE was and still is an employee, agent or servant of 3PL INTEGRATION LLC

54. At all times herein mentioned, defendant WARREN BAINBRIDGE was and still is an employee, agent or servant of SMOOTH OPERATORS SERVICES LLC.

55. At all times herein mentioned, defendant WARREN BAINBRIDGE was and still is an employee, agent or servant of FAST FLEET JFK.

56. Defendant 3PL INTEGRATION LLC, at all times herein mentioned, was and still is a foreign limited liability company, organized and existing under Massachusetts law, authorized to conduct business in the State of New York, having a principal place of business at 900 Route 134, Ste 2-17, S. Dennis, Massachusetts 02660. The sole member of the LLC is not a citizen of the State of Connecticut and is and has always been a domiciliary and citizen of the Commonwealth of Massachusetts.

57. Defendant 3PL INTEGRATION LLC, at all times herein mentioned, was conducting business in the State of New York.

58. At all times herein mentioned, defendant 3PL INTEGRATION LLC transacted business within the State of New York and/or contracted anywhere to supply goods or services in the State of New York.

59. At all times herein mentioned, defendant 3PL INTEGRATION LLC committed a tortious act within the State of New York.

60. At all times herein mentioned, defendant 3PL INTEGRATION LLC committed a tortious act without the State of New York, causing injury to person or property within the State of New York.

61. At all times herein mentioned, defendant 3PL INTEGRATION LLC owned, used, or possessed any real property situated with the State of New York.

62. Defendant NICA, INC., at all times herein mentioned, was and still is a foreign business corporation, organized and existing under Massachusetts law, authorized to conduct business in the State of New York, having a principal place of business at 99 Derby Street, Hingham, Massachusetts.

63. Defendant NICA, INC., at all times herein mentioned, was conducting business in the State of New York.

64. At all times herein mentioned, defendant NICA, INC. transacted business within the State of New York and/or contracted to supply goods or services in the State of New York.

65. At all times herein mentioned, defendant NICA, INC. committed a tortious act within the State of New York.

66. At all times herein mentioned, defendant NICA, INC. committed a tortious act without the State of New York, causing injury to person or property within the State of New York.

67. At all times herein mentioned, defendant NICA, INC. owned, used, or possessed real property situated with the State of New York.

68. Defendant BAIMBRIDGE TRUCKING INC., at all times herein mentioned, was and still is a domestic business corporation, organized and existing under New York law, authorized to conduct business in the State of New York, having a principal place of business at 122 Morningside Drive, Ossining, New York 10562

69. Defendant BAIMBRIDGE TRUCKING INC., at all times herein mentioned, was conducting business in the State of New York.

70. At all times herein mentioned, defendant BAIMBRIDGE TRUCKING INC. transacted business within the State of New York and/or contracted to supply goods or services in the State of New York.

71. At all times herein mentioned, defendant BAIMBRIDGE TRUCKING INC. committed a tortious act within the State of New York.

72. At all times herein mentioned, defendant BAIMBRIDGE TRUCKING INC. committed a tortious act without the State of New York, causing injury to person or property within the State of New York.

73. At all times herein mentioned, defendant BAIMBRIDGE TRUCKING INC. owned, used, or possessed real property situated with the State of New York.

74. Defendant AFD CONTRACT FURNITURE INC., at all times herein mentioned, was and still is a domestic business corporation, organized and existing under New York law, authorized to conduct business in the State of New York, having a principal place of business at 810 7th Avenue, 2d Floor, New York, New York 10019.

75. Defendant AFD CONTRACT FURNITURE INC., at all times herein mentioned, was conducting business in the State of New York.

76. At all times herein mentioned, defendant AFD CONTRACT FURNITURE INC. transacted business within the State of New York and/or contracted to supply goods or services in the State of New York.

77. At all times herein mentioned, defendant AFD CONTRACT FURNITURE INC. committed a tortious act within the State of New York.

78. At all times herein mentioned, defendant AFD CONTRACT FURNITURE INC. committed a tortious act without the State of New York, causing injury to person or property within the State of New York.

79. At all times herein mentioned, defendant AFD CONTRACT FURNITURE INC. owned, used, or possessed real property situated with the State of New York.

80. Defendant PROCURRI LLC, at all times herein mentioned, was and still is a domestic limited liability company, organized and existing under Georgia law, authorized to conduct business in the State of New York, having a principal place of business at 5825-A Peachtree Corners East Norcross, Georgia 30092. The citizenship of the members is unknown and Plaintiff requests that the court enter an order requiring Defendant to identify the citizenship of each member in a letter to the court.

81. Defendant PROCURRI LLC, at all times herein mentioned, was conducting business in the State of New York.

82. At all times herein mentioned, defendant PROCURRI LLC transacted business within the State of New York and/or contracted to supply goods or services in the State of New York.

83. At all times herein mentioned, defendant PROCURRI LLC committed a tortious act within the State of New York.

84. At all times herein mentioned, defendant PROCURRI LLC committed a tortious act without the State of New York, causing injury to person or property within the State of New York.

85. At all times herein mentioned, defendant PROCURRI LLC owned, used, or possessed real property situated with the State of New York.

86. Defendant ROCKLAND CONGRUITY, LLC, at all times herein mentioned, was and still is a limited liability company, organized and existing under Delaware law, authorized to conduct business in the State of New York, having a principal place of business at 1209 Orange Street, Wilmington, Delaware 19801. The citizenship of the members is unknown and Plaintiff

requests that the court enter an order requiring Defendant to identify the domicile and citizenship of each member in a letter to the court.

87. Defendant ROCKLAND CONGRUITY LLC, at all times herein mentioned, was conducting business in the State of New York.

88. At all times herein mentioned, defendant ROCKLAND CONGRUITY LLC transacted business within the State of New York and/or contracted to supply goods or services in the State of New York.

89. At all times herein mentioned, defendant ROCKLAND CONGRUITY LLC committed a tortious act within the State of New York.

90. At all times herein mentioned, defendant ROCKLAND CONGRUITY LLC committed a tortious act without the State of New York, causing injury to person or property within the State of New York.

91. At all times herein mentioned, defendant ROCKLAND CONGRUITY LLC owned, used, or possessed real property situated with the State of New York.

## JURISDICTION AND VENUE

92. The parties are citizens of different states.

93. The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

94. The foregoing confer this court with original jurisdiction over the subject matter of this complaint and over parties hereto, pursuant to 28 U.S. Code § 1332.

95. Venue is proper and appropriate in the United States District Court Southern District of New York, pursuant to 28 U.S. Code § 1391(b)(1), because some of the defendants are citizens of New York, New York and were domiciled there at the time of the subject incident.

96. Venue is proper and appropriate in the United States District Court Southern District of New York pursuant to 28 U.S. Code § 1391(b)(2) because the incident, which is the subject matter of this action, occurred in New York, New York.

## FACTUAL BACKGROUND

97. On March 29, 2019, plaintiff was lawfully at or near the premises at 299 Park Avenue when he was caused to be injured when a heavy, unsecured computer server tipped and fell from a motorized lift gate on the back of a truck being used to transport and deliver the server.

98. A bill of lading and incident report both attached as Exhibit "B" indicates that one or both MARKETAXESS defendants sold three (3) servers to CONGRUITY LLC, CONGRUITY 360, LLC in Pembroke, Massachusetts, or some predecessor, successor or related entity. MARKETAXESS, CONGRUITY LLC, CONGRUITY 360, LLC, some predecessor, successor or related entity, some other defendant or a third party or parties, upon information and belief, hired 3PL INTEGRATION, LLC ("3PL"), some predecessor, successor or related entity, or another party or parties to transport the servers to Pembroke, Massachusetts from the 299 address in the City of New York.  Upon information and belief, 3PL, some predecessor, successor or related entity, or another party or parties, hired FAST FLEET JFK, SMOOTH OPERATORS, some predecessor, successor or related entity, or another party or parties, who employed Plaintiff.

99. While in the process of moving the servers at 299 Park Avenue on March 19, 2019, the owner of the 299 Park Avenue Building, management of the 299 Park Avenue building, or another party or third party, restricted plaintiff and his co-workers' access to the loading dock at the 299 Park Avenue Building, directing that the server be moved and placed on the truck in an unsafe location and in an unsafe manner.

13

100. The truck was moved to an area at the border of the premises. The server was moved to the truck and then placed on the truck's lift.

101. On March 29, 2019, without warning, with the server unsecured and on the lift, the lift was engaged and began moving in an upwards direction. The server tilted, and fell from above in an uncontrolled descent, striking Plaintiff, causing him to be injured.

## COUNT I – NEGLIGENCE

102. Plaintiff realleges and incorporates paragraphs 1 to 101.

103. On March 29, 2019, upon information and belief, one or more of the Defendants knew or should have known that the weight, size and dimensions of the server required that the loading dock be used, and not a truck with a motorized lift of insufficient capacity, and that they should have allowed the Plaintiff to use the loading dock to avoid the catastrophe that ensued.

104. On March 29, 2019, upon information and belief, one or more of the Defendants had a non-delegable duty to exercise reasonable care in its ownership or control of the premises, building, loading dock and exterior parking lot area located at 299 Park Avenue, in the City, County, and State of New York.

105. On March 29, 2019, one or more of the Defendants breached their duty of reasonable care when it restricted access to its loading dock which would have allowed for the safe movement and placement of the server on the truck without lifting it, avoiding the effects of gravity that ultimately caused the unsecured server to fall onto Plaintiff from six feet off the ground, injuring him.

106. On March 29, 2019, one or more of the Defendants breached that duty when it directed plaintiff and one or more of the other Defendants to move a truck with a liftgate to an area unsafe and unsuitable to allow the server to be placed safely into the truck.

107. On March 29, 2019, one or more of the Defendants breached that duty when they failed to provide safety devices that would have protected against the gravity related risks associated with moving the server based on the means and methods Defendants promulgated and directed.

108. On March 29, 2019, one or more of the Defendants knew or should have known that the weight, size and other characteristics of the server required a safety plan and protocol that only it or they could promulgate and direct, and that failure to control or direct Plaintiff in the means and methods of transporting the server would lead to the catastrophe which occurred.

109. On March 29, 2019, one or more of the Defendants had a duty to exercise reasonable care in its sale of a server, transport of the server and direction of transport of the server that injured the Plaintiff where Defendants had the right to control the means and methods of the sale, transport and direction of transport of the subject falling server and either failed to do so or failed to so adequately.

110. On March 29, 2019, one or more of the Defendants breached that duty when it engaged transport for the server without promulgating or directing that a safety protocol or safety plan be created, implemented and followed for this transport, causing the server to be moved and placed in a negligent dangerous manner without securing it, without insisting that the server be loaded from the loading dock, without making sure that all were paying attention and without ensuring that the lift used had the capacity to lift and control the load of the server on ascent or descent in a safe, controlled manner.

111. On March 29, 2019, one or more of the Defendants breached that duty when the powered liftgate was prematurely and negligently engaged without warning so that it caused the server to tilt and fall onto the Plaintiff.

112.   On March 29, 2019, one or more of the Defendants knew or should have known that the weight, size, and dimensions of the server could not be safely moved, placed and transported on a truck and lift with insufficient capacity and inability to control the load. Defendants also knew or should have known that this method and execution of direction and control would lead to the catastrophe which occurred.

113.   On March 29, 2019, one or more of the Defendants had a duty to exercise reasonable care in his ownership, maintenance, and control of the truck with the lift to be used to transport server, and in transport of the server that injured the Plaintiff.

114.   On March 29, 2019, one or more of the Defendants breached that duty when the server was moved and attempted to be placed on a truck and lift with limited ability to control the server on the motorized lift and insufficient capacity to lift the load.

115.   On March 29, 2019, one or more of the Defendants had a duty arising out of a contract or agreement to move, place and transport the server and exercise reasonable care in the supervision, direction and control of the movement, placement and transport of the server that injured the Plaintiff.

116.   On March 29, 2019, one or more of the Defendants breached that duty when defendants failed to comply with the terms of its agreement or agreements to move, place and transport the server in a reasonably safe manner.

117.   On March 29, 2019, one or more of the Defendants breached that common law and contractual duty when one or more of the defendants failed to promulgate and enforce a safety plan, safety rules and/or a protocol in their right to supervise and control the means and methods to move, place and transport the server in a reasonably safe manner.

118. On March 29, 2019, one or more of the Defendants breached a duty to act with reasonable care in ways not yet discovered.

119. On March 29, 2019, the breaches of duty alleged in this Count I was and/or were a substantial factor or factors in causing injury to the Plaintiff, resulting in damages of $10,000,000.

COUNT II-VIOLATION OF LABOR LAW 240(1) BY DEFENDANTS

120. Plaintiff realleges and incorporates paragraphs 1 to 119.

121. On March 19, 2019, Plaintiff was a compensated worker or employee engaged in construction, alteration or other activity memorialized and covered under Labor Law 240(1).

122. On March 19, 2019, 299 Park Avenue was a location where plaintiff was engaged in transporting the server to install it, which is construction, alteration or other listed activity covered under Labor Law 240(1).

123. On March 19, 2019, Defendants were owners or general contractors responsible under Labor Law 240(1) to protect Plaintiff from failing safety devices or falling objects from physically significant elevation differentials.

124. On March 19, 2019, Defendants were agents of the owner and responsible to oversee the injury producing activity of moving the server, and, as a result, were responsible under Labor Law 240(1) to protect Plaintiff from failing safety devices or falling objects from a physically significant elevation differential.

125. On March 19, 2019, one or more of the Defendants violated Labor Law 240(1) when the lift, an "other safety device" under Labor Law 240 (1) malfunctioned for no apparent reason, causing the server to fall, striking the Plaintiff, causing injuries.

126. On March 19, 2019, one or more of the Defendants violated Labor Law 240(1) because the server was unsecured and plaintiff was not provided with a safety device to protect

him from the falling server, allowing the server to tip and strike the Plaintiff, causing injuries and damages of $10,000,000.

COUNT III-VIOLATION OF LABOR LAW 241(6) BY DEFENDANTS

127. Plaintiff realleges paragraphs 1 to 126.

128. On March 19, 2019, Plaintiff was a compensated worker or employee engaged in construction, alteration or other activity memorialized and covered under Labor Law 241(6).

129. On March 19, 2019, 299 Park Avenue was a location where activity covered under Labor Law 241(6) was being performed by Plaintiff.

130. On March 19, 2019, one or more of the defendants were owners or general contractors responsible under Labor Law 241 (6) to protect Plaintiff and provide him a safe place to work.

131. On March 19, 2019, one or more of the defendants failed to provide adequate tools, an adequate lift, safety devices to prevent tipping and falling and other safe means and methods to transport the server which fell on Plaintiff, injuring him.

132. On March 19, 2019, one or more of the defendants violated Labor Law 241 (6) and sections of the Industrial Code, causing the server to fall and strike Plaintiff, causing injuries and damages in the amount of $10,000,000.

Dated: New York, New York
November 30, 2022

        CELLINO LAW LLP
        */s/ Casey Fundaro*
        casey.fundaro@cellinolaw.com
        Attorneys for Plaintiff
        420 Lexington Avenue, Suite 830
        New York, New York 10170
        (347) 918-5232